**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**APM REPORTS,**
480 Cedar Street
Saint Paul, MN 55101

**Plaintiff,**

**v.**

**U.S. DEPARTMENT OF DEFENSE,**
1155 Defense Pentagon
Washington, D.C. 20301

**U.S. CENTRAL COMMAND,**
7115 South Boundary Boulevard
MacDill AFB, FL 33621-5101

**U.S. DEPARTMENT OF THE NAVY,**
1000 Navy Pentagon
Washington, D.C. 20350

**U.S. MARINE CORPS,**
3000 Marine Corps Pentagon Rm 2B289
Washington, D.C. 20350

**Defendants.**

## COMPLAINT

1. Plaintiff, APM REPORTS, files this Freedom of Information Act suit to force Defendants U.S. DEPARTMENT OF DEFENSE ("DOD"), U.S. CENTRAL COMMAND ("CENTCOM"), U.S. DEPARTMENT OF THE NAVY ("DON"), and U.S. MARINE CORPS ("USMC") to produce various records regarding the killings of 24 civilians in Haditha, Iraq on November 19, 2005.

## PARTIES

2. Plaintiff APM REPORTS is American Public Media's national investigative reporting and documentary group. APM REPORTS' parent company, American Public Media, is

a non-profit news media and is the largest station-based public radio organization in the United States. APM REPORTS' podcasts have been downloaded over 50 million times, have won the George Polk Award, the George Foster Peabody Award, the duPont-Columbia Award, and the Robert F. Kennedy Journalism Award, and have been cited in briefs at the U.S. Supreme Court. APM REPORTS made the FOIA requests at issue in this case.

3. Defendant DEPARTMENT OF DEFENSE ("DOD") is a federal agency subject to the Freedom of Information Act, 5 U.S.C. § 552.

4. Defendant U.S CENTRAL COMMAND ("CENTCOM") is a federal agency and subject to the Freedom of Information Act, 5 U.S.C. § 552. DOD is the parent agency of CENTCOM.

5. Defendant U.S. DEPARTMENT OF THE NAVY ("DON") is a federal agency and subject to the Freedom of Information Act, 5 U.S.C. § 552. DOD is the parent agency of DON.

6. Defendant U.S. MARINE CORPS ("USMC") is a federal agency, a component of DON, and subject to the Freedom of Information Act, 5 U.S.C. § 552. DOD is the parent agency of USMC.

**JURISDICTION AND VENUE**

7. This case is brought under 5 U.S.C. § 552(a)(4)(B) and presents a federal question conferring jurisdiction on this Court. *See* 28 U.S.C. § 1331.

8. Venue is proper under 5 U.S.C. § 552(a)(4)(B).

**BACKGROUND**

9. On November 19, 2005, 24 Iraqi civilians, including women and children, were killed in Haditha, Iraq.

10. On November 20, 2005, in an official press release, the 2nd Marine Division stated that the incident involved a roadside bomb, which killed one Marine and fifteen Iraqi civilians, and a subsequent firefight, which resulted in the deaths of eight insurgents. Exhibit 1.

11. About a month later, Time magazine reporter Tim McGirk received a copy of a video that had been recorded in Haditha following the killings. The videotape "showed that many of the dead were pajama-clad women and children. The bodies had wounds from bullets, not shrapnel, and the scene suggested that they had been murdered inside their homes." Jeffrey Kluger, *How Haditha Came to Light*, Time (Jun. 4, 2006), http://content.time.com/time/subscriber/article/0,33009,1200780-1,00.html.

12. When McGirk asked the Marine Corps about the events of November 19, 2005, in Haditha, "the military stood by its initial contention – that the Iraqis had been killed by an insurgent bomb." Tim McGirk, *Collateral Damage or Civilian Massacre in Haditha?,* Time (Mar. 19, 2006), http://content.time.com/time/world/article/0,8599,1174649-4,00.html.

13. McGirk then shared the videotape and statements he had collected from witnesses with Army Col. Barry Johnson, a U.S. military spokesman in Baghdad, prompting Johnson to recommend that the military initiate "a full and formal investigation." *Id.*

14. On February 14, 2006, Army Col. Gregory A. Watt was "directed to conduct an AR 15-6 Informal Investigation into allegations surrounding events regarding the 3/1 Marine 19 November 2005" incident. Watt and his team went to Haditha on February 18, 2006 and spent eight days there conducting interviews and site visits. *See* https://www.dsconway.com/uploads/6/6/2/2/66228603/watts_report.pdf (last visited Feb. 26, 2021).

15. Watt's findings were consistent with McGirk's. "The wounds of the dead Iraqis, as seen in photographs and viewed by the morgue director, were not consistent with attacks by fragmentation grenades and indiscriminate rifle fire, Colonel Watt found. The civilian survivors said the victims were shot at close range, some while trying to protect their children or praying for their lives. The death certificates Colonel Watt examined were chillingly succinct: well-aimed shots to the head and chest." John M. Broder, *Contradictions Cloud Inquiry into 24 Iraqi Deaths,* The New York Times (Jun. 17, 2006), https://www.nytimes.com/2006/06/17/world/middleeast/17haditha.html.

16. Following Watt's preliminary inquiry, Marine Corps Maj. Gen. Richard C. Zilmer "directed two independent, but concurrent, investigations . . . involving different aspects of the Haditha incident. Major General Zilmer first directed the Naval Criminal Investigative Service (NCIS) to determine if any criminal misconduct had been committed. He also directed a separate administrative investigation… to examine and evaluate reporting for… accuracy, consistency and compliance with applicable regulations and policy." *See* https://www.dsconway.com/uploads/6/6/2/2/66228603/000_mg_bargewell_15-6__haditha_report_.bates.pdf (last visited Feb. 26, 2021).

17. On March 13, 2006, NCIS "initiated the [criminal] investigation and a team of agents traveled to the Forward Operating Base (FOB) Haditha Dam, Iraq." NCIS Cases, *Haditha: Part 1,* U.S. Naval Criminal Investigative Service (Feb. 26, 2021), https://www.ncis.navy.mil/Portals/25/Documents/Reading%20Room/NCIS%20Cases/Haditha/Haditha%20Reports%20Part%201.pdf?ver=2019-12-05-145051-657.

18. On March 19, 2006, Army Maj. Gen. Eldon A. Bargewell was appointed to "examine the official reporting of the events of 19 November 2005 at all levels of command up to

MNC-I [Multi-National Corps – Iraq].” *See* https://www.dsconway.com/uploads/6/6/2/2/66228603/000_mg_bargewell_15-6__haditha_report_.bates.pdf (last visited Feb. 26, 2021).

19. On June 1, 2006, President George W. Bush pledged to publicly release the findings of the Haditha investigations: “One of the things that happens in a transparent society like ours is that there is -- there will be a full and complete investigation. The world will see the full and complete investigation.” *See* https://georgewbush-whitehouse.archives.gov/news/releases/2006/06/20060601-1.html (last visited Feb. 26, 2021).

20. More than a year after the incident, four Marines were charged with murder in connection with the killings of the 24 civilians in Haditha. Four others were charged with reporting failures or interfering with the investigation. Exhibit 1; Paul von Zielbauer and Carolyn Marshall, *Marines Charge 4 With Murder of Iraq Civilians,* The New York Times (Dec. 22, 2006), https://www.nytimes.com/2006/12/22/world/middleeast/22haditha.html.

21. At the announcement of criminal charges on December 21, 2006, Marine Corps Col. Stewart Navarre repudiated the military’s initial press release: “We now know with certainty that the press release was incorrect, and that none of the civilians were killed by the IED explosion.” Exhibit 1.

22. Navarre also said that Bargewell’s investigation found that “the reporting of the incident up the chain of command was inaccurate and untimely.” Exhibit 1.

23. In April 2007, after obtaining an unreleased copy of the closing report of Bargewell’s investigation, The Washington Post revealed that Bargewell had found that “the Marine Corps chain of command in Iraq ignored ‘obvious’ signs of ‘serious misconduct’ in the 2005 slayings of two dozen civilians in Haditha, and commanders fostered a climate that devalued

the life of innocent Iraqis to the point that their deaths were considered an insignificant part of the war." Josh White, *Report on Haditha Condemns Marines*, The Washington Post (Apr. 21, 2007), https://www.washingtonpost.com/wp-dyn/content/article/2007/04/20/AR2007042002308.html.

24. Between May and November 2007, six of the eight Marines charged in connection with Haditha appeared at Article 32 hearings at Camp Pendleton. These hearings were held in open court and attended by the news media.

25. By the end of June 2008, the cases against six of the Marines had been dropped. A seventh Marine had been acquitted at court-martial. Reuters, *Case Dropped Against Officer Accused in Iraq Killings,* The New York Times (Jun. 18, 2008), https://www.nytimes.com/2008/06/18/us/18haditha.html.

26. The last remaining defendant, Staff Sgt. Frank Wuterich, who admitted to telling his men to "shoot first and ask questions later" after the IED explosion, was court-martialed for manslaughter in January 2012. Charlie Savage and Elisabeth Bumiller, *An Iraqi Massacre, a Light Sentence and a Question of Military Justice,* The New York Times (Jan. 27, 2012), https://www.nytimes.com/2012/01/28/us/an-iraqi-massacre-a-light-sentence-and-a-question-of-military-justice.html.

27. On January 23, 2012, military prosecutors allowed Wuterich to plead guilty a single count of dereliction of duty, a deal that ended Wuterich's court-martial and allowed him to avoid prison time. Michael S. Schmidt, *Anger in Iraq After Please Bargain Over 2005 Massacre,* The New York Times (Jan. 24, 2012), https://www.nytimes.com/2012/01/25/world/middleeast/anger-in-iraq-after-plea-bargain-over-haditha-killings.html.

28. By March 5, 2012, the NCIS investigation into Haditha was closed. A summary of the investigation was published online in NCIS's Electronic FOIA Reading Room. NCIS Cases,

*Haditha: Part 1,* U.S. Naval Criminal Investigative Service (Feb. 26, 2021), https://www.ncis.navy.mil/Portals/25/Documents/Reading%20Room/NCIS%20Cases/Haditha/Haditha%20Reports%20Part%201.pdf?ver=2019-12-05-145051-657.

29. However, 15 years after President Bush promised absolute governmental transparency, the "full and complete investigation" into the November 19, 2005, events in Haditha remains hidden from public view.

**JANUARY 30, 2020, FOIA REQUEST TO CENTCOM (HADITHA INVESTIGATION)**

30. On January 30, 2020, APM REPORTS submitted a five-part FOIA request to USMC for various records pertaining to the Haditha incident. APM REPORTS requested a fee waiver and expedited processing of the request. Exhibit 2.

31. Of those five parts, APM REPORTS is only challenging Part 3 of the FOIA request (referred to as the "Request" in the remainder of this Section) in this case. The Request sought "[a]ny/all records related to the investigation into the Haditha massacre and any related crimes." *Id.*

32. Upon receipt of the request, USMC assigned reference number DON-USMC-2020-004153 to the matter.

33. On March 20, 2020, USMC transferred the Request to CENTCOM. Exhibit 3.

34. On April 1, 2020, CENTCOM acknowledged receipt of the Request and assigned reference number 20-0298 to the matter. Exhibit 4. The acknowledgement was not a determination as the D.C. Circuit has interpreted that term.

35. In that letter, CENTCOM stated the Request is currently 1,812 in its queue. *Id.*

36. On December 22, 2020, APM REPORTS requested an estimated date of completion of the Request. Exhibit 5.

37. On December 23, 2020, CENTCOM stated that the Request is 1,676 in its queue. *Id.*

38. On December 23, 2020, APM REPORTS asked CENTCOM to estimate the time it would take to reach 1,676 in its queue. Exhibit 6.

39. CENTCOM stated that it is "unable to provide a time frame for completion." *Id.*

40. As of the date of this filing, CENTCOM has not issued a determination letter and has produced no records responsive to this Request. Nor has CENTCOM complied with the statutory requirement under 5 U.S.C. § 552(a)(7)(B)(ii) to furnish an estimated completion date when requested.

**JANUARY 29, 2020 FOIA REQUEST TO DON (PROSECUTION RECORDS)**

41. On January 29, 2020, APM REPORTS submitted a FOIA request to a component of DON, Office of the Judge Advocate General, for the "complete record of any/all prosecutions" including, but not limited to, "charging documents, court filings, discovery materials and transcripts/recordings of court proceedings" for the following Marines: LtCol Jeffrey R. Chessani, Capt. Randy W. Stone, Capt. Lucas M. McConnell, 1st Lt. Andrew A. Grayson, Staff Sgt. Frank D. Wuterich, Sgt. Sanick P. Dela Cruz, LCpl. Justin L. Sharratt, and LCpl. Stephen B. Tatum. Exhibit 7.

42. APM REPORTS requested a fee waiver and expedited processing of the request. *Id.*

43. APM REPORTS submitted thirteen other FOIA requests to DON Office of the Judge Advocate General on January 29, 2020, but none of them are at issue in this case.

44. Between March 2020 and August 2020, DON and APM REPORTS communicated over the phone and via email regarding the various FOIA requests.

45. DON acknowledged receipt of the request at issue during numerous phone conversations with APM REPORTS.

46. On March 25, 2020, DON sent APM REPORTS an Excel spreadsheet that contains brief descriptions of FOIA requests that APM REPORTS submitted to DON, but DON never assigned a reference number to the matter or issued an acknowledgement letter to APM REPORTS.

47. On April 2, 2020, DON stated that the "Federal Records Center is closed until further notice," and DON will not be able to receive any records from the Federal Records Center to process the request. Exhibit 8.

48. On December 9, 2020, and December 22, 2020, APM REPORTS asked DON to provide a reference number for the request. Exhibit 9.

49. Having received no further correspondence from DON, APM REPORTS asked DON to provide a reference number and acknowledgment letter on January 19, 2021. Exhibit 10.

50. On January 27, 2021, DON stated that it will "get [APM REPORTS] a response" on the request, but it never did. *Id.*

51. DON never provided an acknowledgement letter or reference number of the FOIA request.

52. As of the date of this filing, DON has not issued an acknowledgement letter, has not issued a determination letter, and has produced no records responsive to the request.

**APRIL 18, 2020, FOIA REQUEST TO USMC (PERSONNEL FILES)**

53. On April 18, 2020, APM REPORTS submitted a FOIA request to USMC for various records pertaining to thirty-five individual Marines (among them, the Marines connected to the Haditha incident), "including any records with the following information: 1)

enlistment/commission date, 2) enlistment/commission location, 3) rank/grade, 4) list of all duty stations and unit assignments, 5) list of all deployments and overseas stations, 6) list of any awards, decorations, badges, licenses, special skills, qualifications and certificates, 7) performance reports, 8) details of any disciplinary citations or actions (including court-martials, non-judicial punishments and Page 11 administrative remarks/counseling entries), 9) record of discharge/separation (including date/type/location of separation, character of service, authority and reason for separation and reenlistment eligibility)." APM REPORTS listed the individual Marines by rank and name. Exhibit 11.

54. APM REPORTS requested a fee waiver and expedited processing of the request. *Id.*

55. On April 28, 2020, USMC acknowledged receipt of the request and assigned reference number DON-USMC-2020-006852 to the matter. In this email, USMC acknowledged receipt of two FOIA requests, but only DON-USMC-2020-006852 is at issue in this case. Exhibit 12. The acknowledgement was not a determination as the D.C. Circuit has interpreted that term.

56. In this email, USMC denied APM REPORTS' request for expedited processing and fee waiver. *Id.*

57. On July 28, 2020, APM REPORTS asked for a status update of the request. Exhibit 13 at 2.

58. On July 31, 2020, USMC stated that it is "slogging through getting the personnel files." *Id*. at 1.

59. On November 9, 2020, APM REPORTS asked for a status update on the request. APM REPORTS also asked if USMC could release what it has processed so far. Exhibit 14.

60. Having received no further correspondence from USMC, APM REPORTS requested an estimated date of completion for the request on December 22, 2020. Exhibit 14.

61. On December 22, 2020, USMC stated that it is "going to take a bit more time to finish those." Exhibit 15.

62. On December 22, 2020, APM REPORTS asked if USMC could "estimate" the completion date for the request, but USMC never responded. Exhibit 15.

63. As of the date of this filing, USMC has not issued a determination letter and has produced no records responsive to this Request. Nor has USMC complied with the statutory requirement under 5 U.S.C. § 552(a)(7)(B)(ii) to furnish an estimated completion date when requested.

**COUNT I – JANUARY 30, 2020, FOIA REQUEST TO CENTCOM**
**(HADITHA INVESTIGATION)**

64. The above paragraphs are incorporated herein.

65. CENTCOM is a federal agency and subject to FOIA.

66. The requested records are not exempt under FOIA.

67. CENTCOM has produced no records responsive to the request and has not complied with FOIA.

**COUNT II – JANUARY 29, 2020, FOIA REQUEST TO DON**
**(PROSECUTION RECORDS)**

68. The above paragraphs are incorporated herein.

69. DON is a federal agency and subject to FOIA.

70. The requested records are not exempt under FOIA.

71. DON has produced no records responsive to the request and has not complied with FOIA.

**COUNT III – APRIL 18, 2020, FOIA REQUEST TO USMC (PERSONNEL FILES)**

72. The above paragraphs are incorporated herein.

73. USMC is a federal agency and subject to FOIA.

74. The requested records are not exempt under FOIA.

75. USMC has produced no records responsive to the request and has not complied with FOIA.

**WHEREFORE,** APM REPORTS asks the Court to:

i. declare that Defendants have violated FOIA;

ii. order Defendants to conduct a reasonable search for responsive records and to produce the requested records promptly;

iii. enjoin Defendants from withholding non-exempt public records under FOIA;

iv. award APM REPORTS attorneys' fees and costs; and

v. award such other relief the Court considers appropriate.

Dated: March 8, 2021

Respectfully Submitted,
*/s/ Matthew V. Topic*

Attorneys for Plaintiff,
APM REPORTS

Matthew Topic, D.C. Bar No. IL0037
Joshua Burday, D.C. Bar No. IL0042
Merrick Wayne, D.C. Bar No. IL0058
*(E-Mail: foia@loevy.com)*
LOEVY & LOEVY
311 N. Aberdeen, Third Floor
Chicago, Illinois 60607
Tel.: (312) 243-5900
Fax: (312) 243-5902